## SALOMONS *v.* LEÓN.

### APPEAL from the District Court of Ponce.

No. 62.—Decided April 6, 1904.

OBLIGATIONS—CONTRACTS—CONSTRUCTION.—Obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations, and the same are not open to construction when their meaning is clear and specific, it not being permissible to distort the meaning of the clauses therein contained by violent interpretations.

ID.—FULFILLMENT—INDEMNITY.—In cases in which a party fails to comply with the stipulations contained in a contract, it is proper to compel him to the performance of the same and to make the appropriate indemnity for damages and losses sustained by reason of their nonfulfillment.

ID.—El incumplimiento por una parte, de las cláusulas establecidas en un con-
trato, en su propio beneficio y utilidad, á nadie más que á la misma parte
pudiera perjudicar, y por consiguiente, no es procedente exigirle el cum-
plimiento de las expresadas cláusulas.

COSTAS—FALTA DE TEMERIDAD.—No habiendo notoria y manifiesta temeridad en
las partes litigantes y no desestimándose totalmente las pretensiones de una
y otra, el pronunciamiento de costas debe hacerse sin especial condenación.

### EXPOSICIÓN DEL CASO.

En el juicio seguido ante el Tribunal de Distrito de Ponce, entre partes, de la una Doña Ana Salomons y Lind, demandante, y de la otra Don Esteban de León y Martínez, demandado, sobre cumplimiento de un contrato, cuyo juicio pende ante *nos* á virtud de recurso de casación, hoy de apelación, interpuesto por León y Martínez, contra la sentencia que dictó el referido Tribunal, habiendo llevado la representación y defensa de la parte recurrente, ante esta Corte Suprema, el Letrado Don Antonio Alvárez Nava, y las de la recurrida, el Letrado Don José de Guzmán Benítez.

*Resultando*: que la expresada sentencia, dictada en 22 de Julio de 1902, copiada á la letra dice así:

"*Sentencia.*—En la ciudad de Ponce á los veinte y dos días del mes de Julio de mil novecientos dos. *Visto* en juicio oral y público este pleito seguido en autos declarativos y entre partes, de la una, como demandante, Doña Ana Salomons Lind, mayor de edad, viuda, y vecina de esta ciudad; representada por el Letrado Don Manuel León Parra; y de la otra como demandado Don Esteban de Leon y Martínez, mayor de edad, vecino de esta ciudad, propietario; representado por el Letrado Don Luciano Ortiz Antón; sobre cumplimiento de varias cláusulas de un contrato. Siendo Ponente para la redacción de esta sentencia el Sr. Juez Presidente Don Isidoro Soto Nusa.

*Resultando*: que con fecha diez y siete de Abril del corriente año Doña Ana Salomons y Lind, por medio del Letrado Sr. León Parra, estableció la presente demanda en juicio declarativo contra Don Esteban de León y Martínez, solicitando se condenase á éste á que en el término que el Tribunal fije, levante en los terrenos arrendados pastos de malojillo completamente libres de plantas dañosas, que puedan perjudicar á aquellos, y además á que arregle los canales de riego para

ID.—The nonfulfillment by a party of the clauses inserted in a contract for his own benefit and utility cannot injure anyone except said party, and, therefore, it is not proper to compel him to the fulfillment of said clauses.

COSTS—ABSENCE OF OBSTINACY.—No open and manifest obstinacy being shown by the litigant parties, and the claims of both sides not having been totally rejected, the judgment should be rendered without any special imposition of costs.

## STATEMENT OF THE CASE.

This is an action instituted in the District Court of Ponce, by Ana Salomons y Lind, as plaintiff, against Esteban de León y Martínez, as defendant, to enforce the performance of a contract; which case is now pending before us on appeal in cassation, now ordinary appeal, prosecuted by León y Martínez from the judgment rendered by said court, the appellant having been represented in this court by Attorney Antonio Alvarez Nava, and the respondent by Attorney José de Guzmán Benítez.

The said judgment, which was rendered on July 22, 1902, is as follows:

"Judgment.—In the city of Ponce, July 22, 1902. This declaratory action, which was brought to compel the performance of various clauses of a contract, was heard in an oral and public trial, Ana Salomons Lind, who is above the age of majority, a widow, and a resident of this city, having appeared therein as plaintiff, represented by Attorney Manuel León Parra, and Esteban de León y Martínez, who is above the age of majority, a resident of this city, and a landowner, having appeared as defendant, and being represented by Attorney Luciano Ortiz Antón.

"The opinion of the court was prepared by Presiding Judge Isidoro Soto Nusa, as follows:

"On the 17th of April of this year Ana Salomons y Lind, through her attorney, León Parra, instituted the present declaratory action against Esteban de León y Martínez, praying that the latter be adjudged, within the period to be fixed by the court, to raise upon certain leased lands *malojillo* pasturage absolutely free from noxious plants which might tend to injure said pasturage, and also to repair the irrigation canals in order that a water-right concession made in

aprovechar una concesión de agua que tiene dicha finca; apercibido
que de no hacerlo, se efectuará á su costa, y que se le condene además
al abono de los daños y perjuicios originados y que se originen á contar
desde el día quince de Febrero del corriente año; y además al pago de
las costas; fundando su demanda en los siguientes hechos: que en
cuatro de Diciembre de mil ochocientos noventa y tres, ante el notario
de esta ciudad, Don Joaquín Mayoral, la demandante celebró con el
demandado un contrato de arrendamiento de la mitad proindivisa
de su propiedad que tiene en la siguiente finca: "Hacienda que fué
de cañas dulces denominada 'Santa Cruz', radicada en el barrio de
Bucaná de este término municipal, y tiene de cabida doscientos cin-
cuenta cuerdas de terreno, equivalentes á noventa y ocho hectáreas,
veinte y cinco áreas, noventa y ocho centiáreas, de las cuales hay ciento
ochenta cuerdas propias para cañas y setenta cuerdas á pastos, malezas
y salitrales; colindando por el norte con terrenos de la hacienda 'Isabel'
de la sucesión Oppenheimer y con un camino vecinal, por el este
con la misma hacienda 'Isabel' por el sur con el mar; y por el oeste
con el río Bucaná; siendo la parte de esta finca arrendada al Sr. León
la misma que anteriormente la tuviera en arriendo Don Victor
Quiñones; que entre las varias condiciones estipuladas en dicho con-
trato figura la de que el arrendatario Don Esteban de León quedaba
obligado á levantar pasto de malojillo sobre el terreno arrendado, cuyos
pastos, á la terminación del contrato quedarían á beneficio de la arren-
dadora á la que debía entregarlos completamente limpios de toda
planta que pueda serles perjudicial; que conteniendo la finca arren-
dada una concesión de aguas que no podía aprovecharse entonces por
estar cegadas todas las zanjas, el arrendatario León se comprometía á
abrir desde luego, de su exclusiva cuenta, con el fín de utilizar dichas
aguas; en la inteligencia que si después de arregladas las zanjas qui-
siera la arrendadora hacer uso de las aguas, podía hacerlo, pero sin
causar perjuicio alguno á los derechos adquiridos por el arrendatario;
que el contrato se celebró por el término de seis años, prorrogable á un
año más si lo quisiere el Sr. León, contándose ese término desde el
día once de Septiembre de 1893; pero no fué devuelta la posesión de
la finca hasta el quince de Febrero del corriente año porque al cum-
plirse el contrato é irse á hacer cargo de ella un hijo de la arrendadora,
se encontró con que el Sr. León no había cumplido ninguno de los
compromisos contraidos en el contrato público celebrado, pues los
terrenos arrendados se hallaron completamente cubiertos de malezas,
no se sembró en ellos yerba, malojillo y en cuanto á los canales de

favor of the estate might be utilized, the defendant to be admonished that in case of his failure to do so the work would be done at his expense; and also praying that he be adjudged to the payment of the losses and damages sustained or which may be sustained from the 15th of February of the current year, and to the payment of costs, her complaint being based upon the following facts: That on December 4, 1893, the plaintiff, before Joaquín Mayoral, a notary of this city, entered into a contract of lease with the defendant for an undivided one-half of her property in the estate described as the former sugar-cane plantation known as 'Santa Cruz,' situated in *barrio* 'Bucaná,' of this municipal district, which has an area of 250 *cuerdas* of land, being equivalent to 98 hectares, 25 ares and 98 centares, of which 180 *cuerdas* are suitable for sugar-cane and 70 *cuerdas* for pasturage, brambles and saltpetre beds. Said land is bounded on the north by the 'Isabel' estate, pertaining to the estate of Oppenheimer, and by a neighborhood road; on the east by the said 'Isabel' estate; on the south by the ocean; and on the west by the Bucaná river; and the part or parcel of the estate leased to León is that previously held under lease by Victor Quiñones. That among the conditions stipulated in said contract appears one to the effect that the lessee Esteban de León was obliged to raise *malojillo* pasturage upon the leased lands, which pasturage, upon the termination of the contract, would inure to the benefit of the lessor, to whom it was to be delivered absolutely free from plants which might be injurious to the same; that as the leased estate had a water-right concession which could not then be utilized for the reason that all the ditches were closed up, the lessee León covenanted to at once open them at his exclusive expense, for the purpose of utilizing said waters, with the understanding that if, after the ditches had been put in repair, the lessor could make use of the waters if she so desired, but without in any way impairing the acquired rights of the lessee; that the contract was made for the period of six years, and could be extended for another year at the option of León, said period to be computed from September 11, 1903; that the possession of the estate was not restored, however, until February 15, 1892; for upon the expiration of the contract, when the son of the lessor went to assume charge of the estate, he discovered that León had not performed any of the conditions of the public contract made, as the leased lands were completely overrun with brambles, no grass or *malojillo* having been planted thereon; and as regards the irriga-

riego, no ya sólo no realizó en ellos las recomposiciones á que se comprometió, sino que faltando á los cuidados indispensables de conservación habían desemerecido grandemente en poder del arrendatario los que le entregaron al celebrar el contrato de arriendo; y que no obstante los ofrecimientos particulares que le hiciera el Sr. León, de cumplir el compromiso, no lo ha verificado.

*Resultando*: que con el escrito de demanda se acompaña testimonio de la escritura del contrato de arrendamiento de que se hace mérito, y certificación de haber intentado el acto de conciliación.

*Resultando*: que admitida la demanda, se dió traslado de ella al demandado Don Esteban de León y Martínez por término de veinte días, durante el cual se personó en los autos y contestó la demanda, confesando el *primero y segundo* de los hechos de ella, y alegando que una vez que empezó la vigencia del contrato, tanto en su propio beneficio, como para intentar el cumplimiento de una cláusula notoriamente imposible, por no haber medios de sembrar la mitad proindivisa de una finca sembró en la totalidad de ella yerba malojillo, y para cumplir en el propio beneficio como arrendatario la cláusula sexta que sólo en su favor se había puesto, procedió á limpiar las zanjas cegadas para utilizarse de las aguas dotación de la finca; que á consecuencia del ciclón que devastó esta Isla en mil ochocientos noventa y nueve la finca arrendada sufrió, como todas, los efectos de la inundación cegándose las zanjas abiertas por él, destruyéndose y ensuciándose no poco del pasto que en ella había sembrado; que terminado el plazo del arrendamiento celebró con la demandante un nuevo contrato en el cual no existía esa cláusula referente á la siembra de yerba ni ninguna de las demás cuyo cumplimiento se exige; y solicita, se declare sin lugar la demanda con imposición de las costas á la demandante.

*Resultando*: que recibido el pleito á prueba, cada una de las partes propuso las suyas, y señalado el día diez del actual para la celebración del juicio oral y la práctica de las pruebas, así se verificó informando en aquel acto los letrados de ambas partes lo que estimaron oportuno en defensa de sus respectivos derechos.

*Resultando*: que de la prueba documental traida á los autos, aparece la celebración del contrato de arrendamiento verificado en la forma y bajo las condiciones señaladas por la demandante; que practicada una inspección ocular en los terrenos arrendados, en primero

tion canals, not only had the repairs agreed to not been made, but having failed to exercise the most indispensable care in their preservation, those which had been delivered to León at the time of entering into the contract of lease had greatly deteriorated; and notwithstanding the private offers made by León to comply with the contract he has failed to do so.

"The complaint is accompanied by a certified copy of the instrument embodying the lease in question, and by a certificate to the effect that conciliatory proceedings had been attempted.

"The complaint having been admitted, the same was referred to the defendant Esteban de León y Martínez for the period of twenty days, during which he appeared to the record and answered the complaint, admitting the first and second allegations of fact therein contained, and averring that after the contract had gone into force, not only for his own benefit but also to attempt compliance with a manifestly impossible clause, inasmuch as there were no means of planting an undivided one-half of the estate, he planted the whole thereof to *malojillo* grass, and in order to likewise comply for his own benefit as lessee with the sixth clause, which had been inserted in his sole favor, he proceeded to clean the ditches in order to utilize the waters appurtenant to the estate; that in consequence of the cyclone which devasted this Island in 1899, the leased estate suffered, like all other estates, the effects of the inundation, the ditches opened by him having been closed up, and the pasturage which had been planted thereon having been destroyed and covered with filth; that upon the expiration of the term of the lease he and the plaintiff entered into a new contract, which did not contain the clause relative to the planting of grass or any of the other clauses sought to be enforced. He accordingly requested that the demand be rejected and that the costs be imposed upon the plaintiff.

"The case being ready for the presentation of evidence the same was submitted by both parties, and the 10th of the present month having been fixed for the holding of the oral trial and the taking of evidence, the same was proceeded with, and thereupon counsel for both sides presented such arguments as they deemed pertinent to their respective rights.

"From the documentary evidence attached to the record it appears that the lease contract was made in the form and under the conditions specified by the plaintiff. An ocular inspection made of the leased lands on the 1st of the present month shows that they are

del actual, aparecen aquellos cubiertos de diferentes yerbas, entre ellas grama amarga, pata de gallina, y aromas, destacándose de vez en cuando algunos tallos de malojillo así como algunas manchas en otros sitios de esta última yerba; que en un extremo de la finca cerca del rio, se encontraron restos de un canal en la entrada de las aguas en el cual se encuentra un trozo de él, donde estaba el módulo, no existiendo éste ni represa no pudiendo entrar las aguas y encontrándose dicho canal en parte destruido y en parte sano; que Don Oscar Oppenheimer dió recibos á Don Esteban de León por veinte y cinco pesos uno, sin fecha, como resto del arrendamiento del mes de Agosto, y otro por setenta y cinco pesos, fecha cinco de Agosto de 1901, á cuenta del arrendamiento de estancia "Santa Cruz".

*Resultando*: que de la prueba de confesión por el demandado Don Esteban de León, que éste declara habersele señalado por Don Oscar Oppenheimer, hijo de la demandante, el terreno que constituía la mitad de la finca que se le arrendaba; que el declarante arregló el canal, lo limpió é hizo una represa que no estaba en el contrato, cuya represa no existe hoy por que se la robaron; que dichos terrenos lo hizo arar y los sembró de malojillo, construyendo un módulo que se lo llevó el río á los pocos días, que el canal lo tapó el río; que en el primer año del arrendamiento pagó treinta pesos mensuales como precio del mismo, en sucesivos años, hasta siete, pagó á razón de setenta pesos mensuales, y después, hizo un nuevo arrendamiento con Don Oscar Oppenheimer hijo de la Señora Salomons sin estipular otras condiciones que las de pagar cien dollars mensuales, cuyo precio vino satisfaciendo por espacio de año y medio ó sea hasta el diez y seis de Febrero del corriente año en que dejó el arrendamiento, después de lo que, se metieron en los terrenos ganados de los Señores Saurí y Subirá; que los cien pesos mensuales los dejaba algunas veces en poder de Don Julio Verne, y otras en el del cuñado de Don Oscar, para que los entregara á éste; que durante el arrendamiento sólo ha percibido dos recibos, uno de Don Oscar y otro de su hermana.

*Resultando;* de la prueba testifical, Don Oscar Oppenheimer manifiesta, que el Señor de León sólo pagaba sesenta pesos provinciales por el arrendamiento, y después del cange pagaba su equivalencia ó sea treinta y seis dollars. que no celebró ningún contrato con León; que éste nunca pagó veinte y cinco pesos semanales ni cien mensuales. Re-

covered with different kinds of grasses, and among them bitter grama, crowfoot grama and aromatic plants, a few stalks of *malojillo* being disclosed in places, as well as a few indications of this latter grass in other places; that at one end of the estate, near the river, the remnants of a canal were found at the entrance of the waters, in which a strip of said canal was found at the place where the meter was located, the meter and dam being no longer in existence, the waters being unable to enter, and said canal being found partly destroyed and partly intact. It also appears that Oscar Oppenheimer gave two receipts to Esteban de León, one for twenty-five *pesos,* having no date, as the balance of the rent for the month of August, and the other dated August 5, 1901, for the sum of seventy-five *pesos,* for account of rental on the 'Santa Cruz' farm.

"It appears from the proof of confession of the defendant, Esteban de León, that he claims that Oscar Oppenheimer, the son of the plaintiff, pointed out to him the land constituting one-half of the leasehold estate; that the declarant repaired the canal, cleaned it, and constructed a dam which was not included in the contract, and which dam does not now exist for the reason that the material thereof was stolen; that he caused said lands to be plowed and sown to *malojillo* and constructed a meter which was carried away within a few days after the canal was closed up by the river; that in the first year of the lease he paid thirty dollars monthly as the consideration thereof, and in the succeeding seven years he paid at the rate of sixty dollars per month; and thereafter entered into a new lease with Oscar Oppenheimer, the son of Mrs. Salomons, without agreeing upon any other conditions than that of paying one hundred dollars per month, which sum he had been paying for the period of a year and a half, namely, up to the 16th of February of the present year, when he abandoned the lease, and thereupon cattle belonging to Messrs. Saurí y Subirá were taken upon the premises; that sometimes he had left the one hundred dollars per month with Julio Verne, and at other times with the brother-in-law of Oscar, to be delivered to the latter; and that during the continuance of the lease he has obtained only two receipts, one from Oscar and the other from his sister.

"Upon taking the testimony of witnesses, Oscar Oppenheimer testified that de León paid only sixty dollars, provincial money, on the lease, and that subsequent to the exchange of currency he paid the equivalent thereof, or thirty-six dollars; that he did not make any contract with León; and that the latter never paid twenty-five

conoció los dos recibos existentes en autos, y explica que ellos son de mensualidades atrazadas; que de las cantidades que le pagaba León siempre le otorgaba recibo por conducto de la misma persona con quien él le enviaba el dinero; no puede afirmar que el recibo de veinte y cinco pesos sea anterior al de setenta y cinco, no recuerda la fecha en que autorizó el primero. Don Vicente Valdivieso y Torruella manifiesta que, oyó á Don Oscar Oppenheimer y Don Esteban de León tratar del arrendamiento de la finca "Santa Cruz" quedando León en arreglar aquella bajo las mismas condiciones; no dá más detalles. Don Emilio Ferí, mayordomo de la hacienda "Estrella", manifiesta que esta hacienda tiene arrendados los terrenos de la finca "Santa Cruz", los cuales están sembrados de yerba de hicotea que arranca el declarante porque no la come el ganado ni deja crecer el malojillo; no vió que León sembrara de esta yerba en esos terrenos ni sabe arreglara el canal; que cuando entró de mayordomo en dicha hacienda, encontró en esos terrenos sembrados de malojillo en una parte. Don Ulises Clavel manifiesta que, desde hace seis ú ocho años pasa con frecuencia por el camino de la finca "Santa Cruz", desde donde se distinguen cuarenta ó cincuenta cuerdas de esos terrenos y nunca vió que León tuviera sembrado en ellos malojillo, que no vió tampoco que por el canal pasara agua nunca, ignorando el porque de éso. Don Carlos Torres manifiesta que la hacienda "Restaurada" viene aprovechando las aguas del río que antes aprovechaba la finca "Santa Cruz," la que desde hace mucho tiempo no las utiliza por no tener canales y los que tenía están destruidos; que no vió los arreglase León y que si los hubiera arreglado lo hubiera visto el declarante, aunque en la época en que tuvo esos terrenos León no vió los canales. Alejo Marcos manifiesta que, hasta un año antes del ciclón ni después de éste vió sembrar yerba malojillo en los terrenos de la finca "Santa Cruz" ni arreglar sus canales. Don Julio Verne manifiesta que es cierta la entrega de dinero que le hacía León, la que efectuaba él á Don Oscar Oppenheimer sin percibir recibo; que sabía procedía ese dinero del arrendamiento de la finca "Santa Cruz", y que León le indicaba siempre á qué semana se refería aquel pago lo que trasmitía el declarante á Oppenheimer, y que tales entregas ocurrieron por los años 1900 y 1901. Juan Angel Rivera manifiesta que el Sr. León hizo cercas, limpieza y sembró yerba en los terrenos arrendados, que hizo en el río una represa y un módulo, y que hizo arreglar los canales. Don Juan Jorne y Juan Centeno, declaran en la misma forma que el anterior testigo.

dollars per week, or one hundred dollars per month. The witness identified the receipts found in the record, and stated that they were for deferred monthly payments; that he always issued receipts for the sums paid him by León, delivering them through the same person sent by the latter with the money; that he is unable to affirm whether the receipt for twenty-five dollars is prior to the one for seventy-five dollars, and that he does not remember the date on which he authorized the former receipt. Vicente Valdivieso y Torruella testified that he heard Oscar Oppenheimer and Esteban de León discussing the lease of the 'Santa Cruz' estate, and that León agreed to put the same in order under the same conditions. The witness did not give further details. Emilio Ferí, the overseer of the plantation 'Estrella,' stated that this plantation had a lease upon the lands of the 'Santa Cruz' estate, which lands are sown to *hicote* grass which is torn up by the declarant for the reason that cattle do not eat it and it does not permit *malojillo* to grow; that he did not see León sow *malojillo* upon said lands, nor does he know whether he repaired the canal; that when he took charge as overseer of said plantation, he discovered that a part of the land was sown to *malojillo*. Ulises Clavel testified that for six or eight years he has frequently passed along the road of the 'Santa Cruz' estate, from which forty or fifty *cuerdas* of said lands can be distinguished; that he never observed that León had sown *malojillo* thereon, neither did he ever observe water flowing through the canal, and that he does not know the reason therefor. Carlos Torres testified that the plantation 'Restaurada' has been utilizing the waters of the river which were previously utilized by the 'Santa Cruz' estate, which, for a long time past, does not utilize them for lack of canals, those which it had having been destroyed; that he did not see León repairing the same, and that if he had repaired them the witness would have seen it, although at the time León held said lands the witness did not see the canals. Alejo Marco testified that neither for a year before the cyclone nor thereafter had he seen any *malojillo* grass planted on the lands of the 'Santa Cruz' estate, nor had he seen the canals repaired. Julio Verne testified that the statement as to the delivery of money made to him by León was true, and that he turned it over to Oscar Oppenheimer without taking any receipts; that he knew that said money proceeded from the lease of the 'Santa Cruz' estate; that León always told him for which week the payment was made, the money for which the witness always sent to Oppenheimer; and that

*Resultando*: que señalado el día de hoy para la votación de la presente sentencia, lo fué por unanimidad.

*Resultando*: que en este juicio, en su tramitación, se han cumplido las prescripciones de la ley.

*Considerando*: que con arreglo al Artículo 1091 del Código Civil las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos: no siendo lícito desnaturalizar el contenido de la obligación ó de las cláusulas contractuales con interpretaciones rebuscadas ó violentas cuando el sentido de ellas es claro y terminante.

*Considerando*: que entre las cláusulas estipuladas en el contrato de arrendamiento celebrado entre las partes litigantes, según consta de la escritura presentada, existe la de que el arrendatario Don Esteban de León quedaba obligado á levantar pasto de malojillo en el terreno arrendado, cuyos pastos á la terminación del contrato quedarían á beneficio de la arrendadora, á la que debía entregarlos completamente limpios de toda planta que pudiera serles perjudicial, y la de que conteniendo la finca arrendada una concesión de aguas que no podía aprovecharse entonces por estar cegadas todas las zanjas, el mismo arrendatario León se comprometía á abrirlas desde luego de su exclusiva cuenta con el fín de utilizar dichas aguas; pudiendo la arrendadora hacer uso de ellas, pero sin causar perjuicio á los derechos adquiridos por el arrendatario.

*Considerando*: en cuanto á la cláusula primera de las transcritas en el anterior considerando, que siendo claro y explicito el sentido literal de la misma no cabe arguirse de contrario que se trata de una cláusula de imposible ejecución bajo el pretexto banal de que el terreno arrendado se hallaba proindiviso, toda vez que este extremo quedó completamente desvirtuado durante el período probatorio según confesión del mismo arrendatario demandado hecha ante el Tribunal bajo la santidad del juramento, al firmar que Don Oscar Oppenheimer, hijo de la demandante, le había señalado el terreno que constituía la mitad de la finca que se le arrendaba; siendo por tanto evidente que sobre esa porción deslindada, y no en otra, era que el arrendatario debía levantar los pastos de malojillo á que dicha cláusula se refiere.

*Considerando*: que la subsistencia de la referida cláusula no se halla tampoco desvirtuada en sus efectos, por cuanto no aparece com-

such payments occurred in the years 1900 and 1901, Juan Angel Rivera testified that León built fences, cleaned the place up and planted grass on the leased premises; that he had made a dam and installed a meter on the river and that he caused the canals to be repaired. Juan Jorne and Juan Centeno testified to the same effect as the previous witness.

"This day having been set for the voting upon the present judgment, the same was unanimously approved.

"The provisions of law have been observed in the conduct of this appeal.

"Pursuant to article 1091 of the Civil Code, obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations; it is not permitted to distort the terms of the obligation or of the contractual clauses by farfetched or violent interpretations when the sense thereof is clear and specific.

"Among the clauses contained in the contract of lease entered into between the litigant parties, as appears from the instrument produced, is one to the effect that the lessee, Esteban de León, was obligated to raise *malojillo* pasturage on the leased premises, which pasturage, upon the termination of the contract, would inure to the benefit of the lessor, to whom the same was to be delivered completely free from any plant calculated to injure it; and another clause to the effect that as a water-right concession existed in favor of the leased estate which could not then be utilized for the reason that the ditches were closed up, the said lessee agreed to at once open them up at his exclusive expense in order that said waters might be utilized, the lessor being permitted to make use thereof, but without impairing the acquired rights of the lessee.

"With reference to the first clause set forth in the foregoing conclusion of law, the literal sense thereof being clear and explicit, it cannot be argued as against said clause that it is one impossible of execution, upon the flimsy pretext that the leased premises are *pro indiviso*, inasmuch as this point was thoroughly controverted during the probatory period according to the confession of the said defendant lessee, made before the court under the sanctity of an oath when he affirmed that Oscar Oppenheimer, the son of plaintiff, had pointed out to him the land constituting one-half of the leased estate; and it is therefore evident that it was upon this surveyed portion, and not upon

probada por ninguno de los medios de prueba que el derecho reconoce, la alegación opuesta por la parte demandada, de que terminado el plazo del arrendamiento había celebrado con el demandante un nuevo contrato en el cual no existía esa cláusula ni la otra, á que se refiere el escrito de demanda: debiendo en su consecuencia tenerse por firme, subsistente y valedera para todos los efectos legales dicha cláusula primera.

*Considerando*: que siendo esto así de la prueba de inspección ocular, la de confesión, la instrumental y la de testigos propuesta y practicada á instancia de la parte actora en el acto del juicio oral, aparece como un hecho probado, según la apreciación que ha hecho el Tribunal sentenciador con arreglo á los dictados soberanos de su conciencia, que el arrendatario Don Esteban de León durante el término del contrato, ni al vencimiento, ni en ninguna otra ocasión en que se encontraba poseyendo el terreno arrendado, ha levantado ni sembrado la porción de terreno designádale, de pastos de malojillo según lo convenido de tal modo, que al vencerse el contrato de referencia hubo de encontrarse la finca cubierta de diferentes yerbas tales como grama amarga, pata de gallina y aromas, destacándose sobre el terreno solamente y de vez en cuando algunos tallos de malojillo y algunas manchas de esta yerba en otras partes del mismo; todo lo cual convence plenamente de que el referido arrendatario dejó incumplida la cláusula estipulada y cuyo cumplimiento se exije en este juicio.

*Considerando*: que siendo un precepto terminante de la Ley Civil sustantiva que la prueba de las obligaciones incumbe al que reclama su cumplimiento, y la de su extinción al que la opone, es de todo punto concluyente que habiendo justificado en este punto su derecho la parte actora, sin que la contraria haya constatado las alegaciones opuestas, procede desde luego declarar con lugar la demanda en la parte que se refiere á exigir el cumplimiento de la cláusula primera que se analiza, con los demás pronunciamientos subsidiarios de indemnización de daños y perjuicios irrogados por el incumplimiento de la misma.

*Considerando*: que si es evidente y paladino cuanto se ha considerado respecto al incumplimiento de la cláusula primera ya referida y á la obligación en que está el arrendatario demandado de cumplimentar en todas sus partes, no ocurre lo mismo en cuanto á la

any other, that the lessee was to raise the *malojillo* pasturage referred to in said clause.

"Neither is the continuance of the effects of said clause disproved, for the allegation made by the party defendant does not appear to have been established by any of the means of evidence recognized by law, to the effect that upon the expiration of the term of the lease he and the plaintiff had entered into a new contract which did not contain either this clause or the other clauses referred to in the complaint. All the legal effects of said first clause should therefore be held to be final, subsistent and enforceable.

"All this being shown by the evidence of the ocular inspection, confession, documentary evidence and that of witnesses offered and taken at the instance of the party plaintiff on the oral trial, the fact has been established under the view taken by the trial court according to the sovereign dictates of its conscience, that the lessee, Esteban de León, neither during the term of the contract nor at the expiration thereof, nor upon any other occasion while in possession of the leased premises, has raised or planted *malojillo* pasturage upon the portion of the land pointed out to him, according to agreement; but far from that, upon the expiration of the contract in question, the estate was found to be overrun with different kinds of grasses, such as bitter grama, crowfoot grama, and aromatic plants, only a few stalks of *malojillo* being disclosed here and there upon the ground, and a few indications of said grass being found on other parts of the same. All of this fully convinces us that the lessee failed to comply with the clause stipulated, the fulfillment of which is demanded in this action.

"One of the specific principles of the substantive law is that the proof of obligations devolves upon the party who demands their fulfillment, and the extinction thereof upon the party who opposes them, and it is therefore conclusive that the party plaintiff having established his right in this regard, and the adverse party having failed to answer the allegations made, it is of course proper to sustain that portion of the demand which relates to enforcing compliance with the first clause under analysis, with the remaining subsidiary pronouncements concerning compensation for losses and damages sustained by reason of the nonfulfillment of said clause.

"If everything considered with respect to the nonfulfillment of the said first clause and to the obligation of the lessee to fully comply with the same is clear and evident, the same does not occur with respect to the second clause set forth, and which constitutes another of the

cláusula segunda de las transcritas y que constituye otra de las condiciones ó términos del contrato celebrado, si se tiene en cuenta la razón legal de que dicha cláusula ó condición paccionada se estableció en contemplación del arrendatario y en beneficio y utilidad de su propia persona como tal arrendatario, único á quien después de todo importaba como mero explotador y usufructuador del terreno arrendado servirse de dichas aguas y poner las zanjas ó canales en buenas condiciones para el discurso de las mismas, obteniendo con esta mejora el mayor rendimiento posible del terreno; siendo de todo punto evidente que el incumplimiento de dicha cláusula á nadie ha podido perjudicar más que al mismo arrendatario, en cuyo favor se había establecido.

*Considerando*: que en ese sentido carece de fundamento legal la parte de la demanda que se refiere á exigir el cumplimiento de la expresada cláusula segunda, no siendo por tanto procedente la reclamación que en este punto se deduce.

*Considerando*: en cuanto á las costas que no ha existido temeridad notoria y manifiesta en las partes litigantes, y que las pretensiones de éstas, no han sido totalmente desestimadas; por esta consideración debe hacerse el pronunciamiento y declaración legal sin especial condenación.

Vistos los Artículos 1091, 1098, 1100, 1101, 1107, 1113, 1203, 1214, 1218, 1231, 1235, 1241, 1244, 1248, 1281, 1555 del Código Civil, no reformado, en relación con los pertinentes de la Ley de Enjuiciamiento Civil, y la Orden General No. 118, y jurisprudencia del Supremo aplicable al caso.

*Fallamos*: que declarando con lugar la demanda interpuesta á nombre de Doña Ana Salomons y Lind en la parte que se refiere al primer extremo de la misma, con sus pronunciamientos subsidiarios, debemos condenar y condenamos al demandado Don Esteban de León y Martínez en su carácter legal de arrendatario á que en el término de cinco meses naturales á contar desde la fecha en que sea firme esta sentencia, levante en el terreno arrendado los pastos de malojillo completamente libres de plantas dañosas, con la prevención que de no verificarlo se efectuará á su costa, y á la indemnización de los daños y perjuicios irrogados á la demandante con el incumplimiento de la obligación primera pactada, los que deberán hacerse efectivo en la vía y forma que determina la Ley de Enjuiciamiento Civil.

Así mismo debemos declarar y declaramos sin lugar dicha demanda en cuanto al otro extremo de su reclamación, absolviendo de

terms or conditions of the contract made, when the legal ground is taken into consideration that said clause or condition was inserted in favor of the lessee, and for his benefit and utility as such lessee, he being the only person who, after all, was concerned as a mere holder and usufructuary of the leased premises with the utilization of said waters and the placing of the ditches or canals in good condition to facilitate the flow of the same, by which improvement he would obtain the greatest return possible from the land. It is perfectly evident that the nonfulfillment of said clause could not have injured anyone except the lessee himself, for whose benefit the same had been established.

"In this respect the portion of the complaint which refers to the enforcement of the said second clause is devoid of any legal foundation, and the claim made on this point is therefore untenable.

"As no open and manifest obstinacy has been shown by the parties in litigation, and the claims of the same have not been totally rejected, the decision should therefore be pronounced and the legal declaration made without any special imposition of costs.

"Having examined articles 1091, 1098, 1100, 1101, 1107, 1113, 1203, 1214, 1218, 1231, 1235, 1241, 1244, 1248, 1281 and 1555 of the former Civil Code, in connection with the articles applicable of the Law of Civil Procedure, General Order 118, and the decisions of the Supreme Court applicable to the case, we adjudge that that portion of the complaint presented on behalf of Ana Salomons y Lind which relates to the first ground of the same should be sustained, and that we ought to adjudge and do adjudge that the defendant, Esteban de León y Martínez, in his legal capacity as lessee, within the period of five natural months from the date on which this judgment becomes final, raise upon the leased premises the *malojillo* pasturage completely free from noxious plants, under the admonition that if he fails to do the work it will be done at his expense, and to the payment of the indemnity for losses and damages sustained by the plaintiff by reason of the nonfulfillment of the first obligation agreed upon, payment for said damages to be enforced in the manner and form prescribed by the Law of Civil Procedure. In like manner we dismiss said complaint as to the other ground of plaintiff's claim or demand, absolving the defendant Esteban de León therefrom, without special imposition of costs in either of the two pronouncements.

ella al demandado Don Esteban de León, sin hacer especial condenación de costas en ambos pronunciamientos. Así lo pronunciamos, mandamos y firmamos: Isidoro Soto Nussa, R. Sánchez Montalvo, Libertad Torres Grau''.

*Resultando*: que contra esta sentencia interpueso la representación de Don Esteban de León Martínez recurso de casación, que le fué admitido; y elevados los autos á esta Corte Suprema, previa citación y emplazamiento de las partes, se tramitó dicho recurso como de apelación, señalándose día para la vista, la que tuvo lugar con asistencia del Letrado de la parte apelante.

Abogado del apelante: *Sr. Alvárez Nava.*

Abogado del apelado: *Sr. Guzmán Benítez (José).*

EL JUEZ ASOCIADO SR. HERNÁNDEZ, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

Vistas las disposiciones legales que en ella se citan.

*Fallamos*: que debemos confirmar y confirmamos en todas sus partes la sentencia que en 22 de Julio de 1902 dictó el Tribunal de Distrito de Ponce, con las costas del recurso á cargo de la parte apelante; y devuélvanse los autos á dicho Tribunal con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Figueras, Sulzbacher y MacLeary.

---

AMORÓS HERMANOS *v.* CIVIDANES.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 73.—Resuelto en Abril 7, 1904.

INTERDICTOS DE RECOBRAR LA POSESION—DERECHOS DE PROPIEDAD.—En los interdictos de recobrar la posesión no se discute derecho alguno de propiedad sobre la cosa, y sí solamente, si el que reclama estaba en la posesión de la misma y

Thus do we pronounce, order and sign. Isidoro Soto Nussa, R. Sánchez Montalvo, Libertad Torres Grau.''

From this judgment counsel for Esteban de León y Martínez took an appeal in cassation, which was allowed, and the record having been sent up to this court, after citation of parties, the case was conducted as one on appeal. A day was set for the hearing, which took place with the presence of the attorney for the appellant.

*Mr. Alvarez Nava,* for appellant.

*Mr. Guzmán Benítez (José),* for respondent.

MR. JUSTICE HERNÁNDEZ, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact and conclusions of law contained in the judgment appealed from are accepted.

Having examined the legal provisions therein cited, we adjudge that we ought to affirm and do affirm the judgment of July 22, 1902, rendered by the District Court of Ponce, in all of its parts, the costs of the appeal to be paid by the appellant. The record is ordered to be returned to said court accompanied by the proper certificate.

Chief Justice Quiñones and Justices Figueras, Sulzbacher and MacLeary concurred.